UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    v.<br><br>STEPHEN R. FUNK,<br><br>        Defendant | Criminal No. 1:15-cr-172-1 |

**POSITION OF THE UNITED STATES
ON SENTENCING**

The defendant participated in a sophisticated conspiracy to produce child pornography by coercing and enticing minors to engage in sexually explicit conduct on web camera. This conspiracy resulted in the victimization of more than a hundred identified minors and thousands of child-pornography videos. As a result, the defendant has pleaded guilty to Conspiracy to Distribute and Receive Child Pornography.

For the reasons stated below, and in accordance with the parties' plea agreement, the government recommends a sentence of 22 years imprisonment, followed by a term of supervised release.

**I.  Offense of Conviction**

The conspiracy centered on two websites (Website A and Website B) that were operated for the purpose of coercing and enticing minors to engage in sexually explicit conduct on web camera. Statement of Facts as to Stephen R. Funk (SOF), Dkt. 99 at ¶ 1. Members of the websites recruited minors to visit their websites from mainstream social media websites popular with young children and teenagers. SOF ¶ 2. These members, referred to as "linkers," identified

1

children on social media websites and provided the children with links to Website A or B. SOF ¶ 3. Clicking on the link took a child to Website A or B. SOF ¶ 3.

Upon entering one of the websites, a child was directed to a chat room for what was ostensibly a private chat with another individual. SOF ¶ 3. That individual was usually an adult member of Website A or B. The adult member, referred to as a "chatter," text-chatted with the minor, typically pretending to also be a minor himself. SOF ¶ 4. The chat usually proceeded with the adult member encouraging the minor to turn on his or web camera. The adult member then pretended to also go on web camera but in fact streamed a pre-recorded video of a prior minor victim engaging in sexually explicit conduct. SOF ¶ 4. This type of video was referred to as a "loop." SOF ¶ 4. Using a combination of text-chatting and deceptive loop videos, the members of the websites enticed and coerced the minor to engage in sexually explicit conduct on web camera. SOF ¶ 4.

The websites had group chat rooms called "lounges." SOF ¶ 3. The members of the websites chatted with each other in the lounges, often discussing their tactics for enticing children. Superseding Indictment, Dkt. 21 at ¶ 10. The websites allowed members to view these chats and the streaming web camera invisibly, that is, without the child realizing that someone other than the individual with whom she was chatting was watching. SOF ¶ 3. When a member successfully coerced a victim to engage in sexually explicit conduct on web camera, they called it a "win." SOF ¶ 6.

The websites were also programmed to record all videos streamed in the chats. SOF ¶ 4. The FBI has identified more than 65,000 videos created on the websites. SOF ¶ 7. Of these, approximately 9,000 constitute child pornography. SOF ¶ 7. Some of these videos depict minors engaging in masturbation. *See* SOF at ¶ 9. Members who achieved a certain rank based

on their level of contribution to the websites were permitted to download the recorded videos. SOF ¶¶ 4, 6.

As of the date of the PSR, of the estimated 1,000 victims, the FBI had identified at least 240 minor victims. PSR ¶ 22-23. At least 137 of these victims were enticed to engage in sexual activity on web camera. PSR ¶ 22.

The defendant was an upgraded member of both Websites A and B. SOF ¶ 8. As part of the conspiracy, the defendant chatted with children and used loop videos to deceive them into thinking he was a teenaged girl. SOF ¶¶ 9–10. He downloaded more than 10,000 videos from Websites A and B, at least 1,500 of which constitute child pornography. SOF ¶ 12.

## II. The Advisory Guidelines Range

The defendant's advisory Sentencing Guidelines Range was correctly calculated by the Probation Office as a total offense level of 42 (360 months to life imprisonment), restricted by the statutory cap of 40 years imprisonment[1]:

| Guideline | |
|---|---|
| Cross Reference (2G2.2(c)) Base Offense Level (Section 2G2.1(a)) | 32 |
| Minor Under 12 (Section 2G2.1(b)(1)(A)) | +4 |
| Distribution (Section 2G2.1(b)(3)) | +2 |
| Misrepresentation of Identity/Use of Computer (Section 2G2.1(b)(6)(A) and (B)) | +2 |

---

[1] Defendant's criminal history category does not change the applicable guideline range because the total offense level is a level 42. According to the PSR, the defendant's criminal history category is V pursuant to § 4B1.5(a)(2) because he had a prior sex offense conviction against minors. PSR ¶¶ 48-58. Although neither party objected to this, the United States will not seek to the application of § 4B1.5, here, because the instant offense of conviction is conspiracy to receive child pornography, which is excluded from the definition of covered sex crime. As a result, the defendant's criminal history category would be III. *See* § 4B1.5, Application Note 2.

| | |
|---|---|
| Enhancement for More Than 5 Victims (Section 2G2.1(d)(1) | +5 |
| Timely acceptance of responsibility (Section 3E1.1(a) and (b)) | -3 |
| **TOTAL** | **42** |

PSR ¶¶ 32–47.

In accordance with the parties' plea agreement, the government has agreed not to argue for a sentence of more than 22 years of imprisonment, and the defendant has agreed not to argue for a sentence of less than 21 years of imprisonment. Because the defendant timely accepted responsibility, the Government moves this Court for a one-level reduction under U.S.S.G. § 3E1.1(b).

### III. Sentencing Factors

Although the Sentencing Guidelines are advisory, the Court is required to "consult those Guidelines and take them into account when sentencing." *United States v. Booker*, 543 U.S. 220, 264 (2005). A "district court shall first calculate . . . the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in [18 U.S.C.] § 3553(a) before imposing the sentence." *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005) (citation omitted). The § 3553(a) factors include:

- the nature and circumstances of the offense and the history and characteristics of the defendant;
- the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
- the kinds of sentences available;

- the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines;
- any pertinent policy statement;
- the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
- the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Under 18 U.S.C. § 3553(k), the authorized term of supervised release for the defendant's offense is any term not less than five years to life. "Supervised release fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson,* 529 U.S. 53, 59 (2000). "Supervised release . . . is not a punishment in lieu of incarceration." *United States v. Granderson,* 511 U.S. 39, 50 (1994). The authorized term of supervised release for the offense here reflects heightened concern about recidivism and the need for supervision over time. *See* H.R. Rep. No. 107–527 at 2 (2002) (explaining that "studies have shown that sex offenders are four times more likely than other violent criminals to recommit their crimes. Moreover, the recidivism rates do not appreciably decline as offenders age"); H.R. Conf. Rep. No. 108-66 at 49–50 (2003). In considering the length and conditions of supervised release, the court should consider the nature and circumstances of the offense, the defendant's history and characteristics, adequate deterrence, the defendant's need for training, medical care or treatment, the kinds of sentence and range established in the Sentencing Guidelines, pertinent policy statements, the need to avoid unwarranted sentence disparities, and restitution. *See* 18 U.S.C. §3583(c) (courts should consider the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4); (a)(5), (a)(6) and (a)(7)); *see also United States v. Helton,* 782 F.3d 148 at FN* (4th Cir. 2015).

**IV.     Argument**

Defendant's involvement in an online conspiracy that involved the distribution and receipt of child pornography is serious.  In *New York v. Ferber*, 458 U.S. 747, 758 (1982), the Supreme Court recognized that, in the judgment of state and federal legislators, as well as authors of relevant literature, "the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child."  *Ferber,* 458 U.S. at 758 (citations omitted); *see also United States v. Cobler,* 748 F.3d 570, 580 (4th Cir. 2014).  The *Ferber* court also observed that the "[pornographic] materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation."  *Id.* at 759 (citation omitted).  Furthermore, the court stated:

> Pornography poses an even greater threat to the child victim than does sexual abuse or prostitution.  Because the child's actions are reduced to a recording, the pornography may haunt [the victim] in future years, long after the original misdeed took place.  A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography … It is the fear of exposure and the tension of keeping the act secret that seem to have the most profound emotional repercussions.

*Id.* at 759 & n. 10 (citations omitted).  *See also Osborne v. Ohio,* 495 U.S. 103, 109–10 (1990) (reaffirming *Ferber* in case involving possession of child pornography).

### A.     *The Nature and Seriousness of the Offense*

Defendant participated in a conspiracy that caused far-reaching harm.  This is not a case of simple possession or receipt of child pornography.  Defendant downloaded more than 10,000 videos from Websites A and B, at least 1,500 of which constitute child pornography. The sophistication of the conspiracy, including the distinct roles played by members and its technical automation, resulted in the production of approximately 9,000 child pornography videos, and the

victimization of potentially 1,000 minors, more than 200 of whom have been identified by the FBI. More than 137 of these victims engaged in sexually explicit conduct on the websites. These minors and their families have suffered real harm, as documented in the victim impact statement included in the presentence investigative report and as described in the live victim impact statements provided to the court at the sentencing hearings of co-conspirators on September 18 and December 5, 2015. Case No. 1:15-CR-42, Dkt. Nos. 151, 181. The minors have suffered not only by the deception, manipulation, and abuse that led to the creation of videos, but also from the knowledge that they were recorded and viewed by multiple adult members of the conspiracy. They will further suffer from the fear that the videos of them, created through manipulation and without their knowledge or consent, can be more widely circulated.

Defendant was an active participant in the conspiracy, chatting with and coercing minors. By portraying himself as a minor girl, he manipulated and deceived children for his own gratification. He downloaded thousands of videos. His crime was not the result of any momentary lapse of judgment. It was intentional and repeated.

Website A and Website B operated in secrecy and was easy to conceal online. A substantial period of supervised release should therefore be imposed to not only ensure defendant obtains the treatment he needs but also to help deter him from engaging in future similar conduct, which could again elude law enforcement.

### B. *Just punishment, Deterrence and the Need to Avoid Unwarranted Sentence Disparities*

In regard to just punishment and the need to avoid unwarranted sentence disparities, the Court sentenced four co-conspirators. On September 18, 2015, William Morgan was sentenced

to a term of 252 months (21 years) imprisonment and 10 years of supervised release for conspiring to produce child pornography.  Case No. 1:15-CR-42, Dkt. No. 151.  On October 2, 2015, Carl Zwengel was sentenced to a term of 216 months (18 years) imprisonment and 10 years of supervised release for conspiring to produce child pornography.  Case No. 1:15-CR-42, Dkt. No. 158.  The Court distinguished Mr. Zwengel from Mr. Morgan primarily on the basis of Mr. Zwengel's age (50), unlikely possibility of recidivism, prior military service, and non-criminal contributions.  *Id.*  On December 4, 2015, the Court sentenced Christopher McNevin to a term of 228 months (19 years) imprisonment and 10 years of supervised release for conspiring to produce child pornography.  Case No. 1:15-CR-42, Dkt. No. 181.  Finally, on February 5, 2016, the Court sentenced Karlo Hitosis to 216 months (18 years) imprisonment and 10 years of supervised release for conspiring to produce child pornography.  Case No. 1:15-CR-172, Dkt. No. 153.

In this case, defendant pleaded guilty for conspiring to distribute and receive child pornography, as opposed to conspiring to produce child pornography.  As demonstrated by the defendant's statement of facts that accompanied his plea agreement, however, he played a role on the websites similar to the four conspirators sentenced by the Court:  they were all upgraded members of the websites, who chatted and looped minors to entice them to engage in sexually explicit conduct.  Defendant differs from these co-conspirators in one other respect.  He has a criminal history, which includes a conviction for sexual assault of a child:  the defendant grabbed the breast of 12-year old female who was walking down a sidewalk.  Under the circumstances, a sentence in this case to 22 years imprisonment—which is more serious than the longest sentence imposed by the Court—would avoid unwarranted sentence disparities and reflect the need for specific deterrence.

### C. History and Characteristics of the Defendant

Defendant's family life was relatively stable except for issues relating to a parental addiction. PSR ¶¶ 60-69. He suffers no history of significant illnesses or injuries (PSR ¶¶ 70-71) but would benefit from counseling and treatment. PSR ¶¶ 72-80. Defendant received his GED in 2004 and has held several jobs, most recently as a manager for a restaurant. PSR ¶¶ 83-87.

## V. Restitution

Restitution in a production of child pornography case is mandatory. 18 U.S.C. § 2259 ("[T]he Court shall order restitution for any offense under [Chapter 110]."). The procedures in 18 U.S.C. § 3664 apply to restitution requests under § 2259. Under § 3664(d)(5), the Court may set a restitution hearing at a later date not to exceed 90 days after sentencing in a case where the victims' losses are not ascertainable by 10 days before sentencing.

The Court has received restitution requests from four victims, Minor I, Minor O, Minor P, and Minor X. The Supreme Court clarified in *Paroline v. United States* that "[r]estitution is . . . proper under § 2259 only to the extent the defendant's offense proximately caused a victim's losses." 134 S. Ct. 1710, 1722 (2014).[2] When determining restitution in a conspiracy case, the relevant offense is the conspiracy; each member of the conspiracy is therefore liable for the losses proximately caused by the conspiracy, not limited to those losses caused by the defendant's individual actions. *See United States v. Seignious*, 757 F.3d 155, 161 (4th Cir.

---

[2] *Paroline*, for the most part, addressed issues not present in this case. In *Paroline*, the Supreme Court grappled with the particularly difficult task of determining and apportioning the amount of restitution in a case where the defendant only possessed the images of the victim. 134 S. Ct. at 1722–29. In this case, defendant pleaded guilty to a conspiracy to *produce* videos of the victims. There is therefore no need in this case to disaggregate the losses caused by the initial production of child pornography and those losses caused by the subsequent distribution and possession of those images.

2014); *United States v. Newsome*, 322 F.3d 328, 341 (4th Cir. 2003) (citing *United States v. Laney*, 189 F.3d 954, 964–66 (9th Cir. 1999)).  Under § 3664(h), "the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's losses."  It if decides to apportion liability, the Court is permitted to consider the economic circumstances of each defendant.  18 U.S.C. § 3664(h).

      The defendant should be required to pay restitution to Minor I, who requested restitution in the amount of $11,400, Minor O, who requested restitution in the amount of $65.00, Minor P, who requested restitution in the amount of $3,700, and Minor X, who requested restitution in the amount of $50.00.  Dkt. No. 166-1.[3]  The losses sought by these victims, as detailed in the presentence investigation report, are proper under 18 U.S.C. § 2259 (requiring payment of the "full amount of the victim's losses," to include medical services relating to physical, psychiatric, or psychological care; physical and occupational therapy or rehabilitation; necessary transportation, temporary housing, and child care expenses; lost income; attorneys' fees, as well as other costs incurred; and any other losses suffered by the victim as a proximate result of the offense).

---

[3] Defendant's coconspirators, Karlo Hitosis, William J. Morgan, Carl Zwengel, Christopher McNevin, and Milton Smith, Jr., have agreed to pay restitution jointly and severally for the losses sought by Minor I, Minor O, Minor P, and Minor X.  Restitution orders have been entered for all except Mr. Milton Smith, who has not yet been sentenced.

**VI.     Conclusion**

Given the guideline range of 360 months to life, the number of minor victims, the amount of child pornography, the defendant's repeated conduct and criminal history, and the sentences imposed on co-defendants, a sentence of 22 years imprisonment followed by a term of supervised release is appropriate.

        Dana J. Boente
        United States Attorney

By: _____/s/_____
     Lauren Britsch
     Special Assistant United States Attorney (LT)
     Tracy Doherty-McCormick
     Assistant United States Attorney
     United States Attorney's Office
     2100 Jamieson Avenue
     Alexandria, Virginia 22314
     Phone:  703-299-3973
     Fax: 703-299-3981
     Email: lauren.britsch2@usdoj.gov

CERTIFICATE OF SERVICE

      I hereby certify that on the 25th day of March 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

John C. Kiyonaga
600 Cameron Street
Alexandria, Virginia 22314
Phone:  703-739-0009
Email:  john@johnckiyonaga.com


      I also hereby certify that I have sent the foregoing through electronic mail to the following individual:

Nina S. Blanchard
Senior U.S. Probation Officer
10500 Battleview Parkway, Suite 100
Manassas, Virginia 20109
Nina_Blanchard@vaep.uscourts.gov

                                                                             /s/
                                        Lauren Britsch
                                        Special Assistant United States Attorney (LT)
                                        United States Attorney's Office
                                        2100 Jamieson Avenue
                                        Alexandria, Virginia 22314
                                        Tel:  703-299-3973
                                        Email Address: lauren.britsch2@usdoj.gov